## Rallihan, et al. v. Gordon, Judge.

(Decided June 19, 1917.)

### Petition for Writ of Prohibition.

1. Habeas Corpus—No Appeal From Judgment on Writ.—No appeal will lie to this court from the decision of a judge of a circuit or inferior court in a *habeas corpus* proceeding.
2. Habeas Corpus—Devision of Judge—When Reviewable in Equity. —Where the welfare of an infant is involved, the decision of a judge in a *habeas corpus* proceeding involving the custody of the child may be reviewed in an equitable action if either of the parties in interest bring such action to have determined by the chancellor who shall have the custody of the child. In such a case the chancellor should make such orders as may be needful to enable the court to keep the child within its jurisdiction until the equitable action has been determined.
3. Prohibition—Writ of—When Will Not Issue.—This court will not issue a writ of prohibition against a circuit or other judge to restrain him from hearing and determining a case of which he has jurisdiction, although an appeal will not lie from his decision, unless some very unusual or extraordinary reason should demand our interference. Where the lower court has jurisdiction, this court will not issue its writ to prevent it from determining the case, unless it plainly appears that great injustice would result or irreparable injury ensue from the decision of the lower court if the writ were not issued.

BENNETT H. YOUNG, MARION W. RIPY and HARDIN H. HERR for petitioners.

J. S. LAURENT and BEN F. WASHER for respondent.

OPINION OF THE COURT BY JUDGE CARROLL—Denying writ of prohibition.

On May 29, 1917, the Hon. Thomas R. Gordon, one of the judges of the Jefferson circuit court, on application, made to him by Robert T. Motschmann, the father of Mary Motschmann, in the manner and form required by section 399 of the Criminal Code, issued, as he was obliged to do under the mandatory provisions of the code, a writ of *habeas corpus* against the Detention Home of the Juvenile Court, the Board of Children's Guardians, and Mary L. White, matron of the home, commanding them to produce the body of Mary Motschmann, a girl about 13 years of age, before him as judge at a time and place mentioned in the writ. Immediately upon the issual of the writ by Judge Gordon, Mary Rallihan, the

grandmother of the child, in her own name and as next
friend, and Mary Motschmann, filed their petition in this
court, asking that a writ of prohibition be issued against
Judge Gordon "prohibiting him from proceeding in any
way to take the petitioner, Mary Motschmann, from the
custody of the Detention Home, the Board of Children's
Guardians, and Mary L. White, and the juvenile branch
of the Jefferson circuit court, and from issuing any order,
proceeding or mandate, judgment or command whereby
the child, Mary Motschmann, will be taken out of the
state of Kentucky or out of the jurisdiction of the courts
of said state or surrendered or delivered to the custody of
Robert T. Motschmann, the father of said child, or taken
from the care or custody of her grandparents."

For response to this motion Judge Gordon set out
"that on May 29, 1917, another petition for a writ of
*habeas corpus* was filed involving the person of the said
Mary R. Motschmann, said proceeding being No. 101910
in the Jefferson circuit court. He states that pursuant
to said petition he, as judge of the Jefferson circuit court,
Common Pleas Branch, Second Division, issued a writ
of *habeas corpus* on May 29, 1917, directing the Board
of Children's Guardians, the Detention Home, and Mary
R. White, matron of said home, to produce the body of
the said Mary R. Motschmann before the judge of the
Jefferson circuit court, Common Pleas Branch, Second
Division, on the 29th day of May, 1917, at the hour of
four o'clock p. m.

"He states that in response to said writ the Board
of Children's Guardians, the Detention Home, and Mary
R. White, produced the body of said child at the time
and place mentioned in said writ, and in addition thereto
filed their joint response in which they claimed the right
to retain the custody of said child under and by virtue
of proceedings theretofore had in the juvenile court in
the Jefferson county court. That the issue thus pre-
sented by the response aforesaid related to the juris-
diction of the juvenile court of Jefferson county, and
this defendant at the time and place mentioned was pro-
ceeding to hear and determine said issue when notified of
the temporary restraining order issued by this court in
this cause.

"He states that the sole question presented to this
defendant for decision was whether or not the juvenile
court had jurisdiction or had acquired jurisdiction in the
proceeding which had been instituted before it, and that
as to this question the defendant had neither formed nor

expressed any opinion or decision, and had been afforded no opportunity of either hearing the case then presented or reaching any conclusion with respect to the rights of parties therein; that at no time did this defendant give any intimation of any opinion held or to be held by him on the issue presented, and accordingly he denies that by reason of the former action he would have delivered the custody of said child into the custody of said Robert T. Motschmann."

Although it has no direct relation to the present proceeding, it may be said in passing that on May 22nd, on the petition of Robert T. Motschmann, a writ of *habeas corpus* was issued by the Hon. William H. Field, one of the judges of the Jefferson circuit court, commanding Mary Rallihan to produce in court the body of Mary Motschmann on May 25, and at the request of Judge Field the hearing of the application was transferred to the branch of the court presided over by Judge Gordon, and when the application came up for hearing, Mary Rallihan filed her response. After hearing the evidence and argument of counsel, Judge Gordon entered an order adjudging the custody of the infant to her father, Robert T. Motschmann, and directing Mary Rallihan to deliver the person of the infant to him. Pursuant to said order the child was delivered by Mary Rallihan to Robert T. Motschmann on May 28th. Shortly after the delivery of the child to Motschmann, it was taken from his custody by an order of the juvenile court of Jefferson county and placed in the Detention Home of the court. Thereafter, the second writ as heretofore set out was issued by Judge Gordon.

That Judge Gordon had jurisdiction to issue the writ and hear and determine the case, is put beyond question by the provisions of the Criminal Code that may be found in sections 399-429, inclusive. These code provisions also impose a heavy penalty upon any officer authorized to grant a writ who shall refuse to do so when legally applied to. Under the circumstances stated, we are now asked to issue a writ of prohibition against Judge Gordon to restrain him from hearing or determining the issues that may arise on the responses to the writ issued by the judge on May 29th. What disposition of the case Judge Gordon will make, or how he will or should determine it when the issues are made up and the evidence heard, is a matter that even the judge himself could not, of course, decide in advance of a hearing on the issues and the evidence thereon. And of course it is not pos-

sible that we, in advance of the hearing and disposition of' the case, should forecast what his decision will be. But, notwithstanding this, we are asked to restrain Judge Gordon from hearing and determining a matter that he has jurisdiction to hear and determine, and this because it is said no appeal will lie to this court from his decision if he should award the custody of the child to the father, who it is said will at once take the child out of the state and out of the jurisdiction of the courts of the state.

That no appeal will lie to this court from the decision of Judge Gordon has been settled in Broadwell v. Com., 98 Ky. 15; Mann v. Russell, 22 Ky. L. R. 1340; Weddington v. Sloan, 15 B. Mon. 119, and Gill on Petition, 92 Ky. 118. But it does not follow from the fact that an appeal will not lie from the decision of Judge Gordon that we should issue a writ restraining him from hearing and determining a question which the law gives him the jurisdiction to hear and determine.

It is true that in Board of Prison Commissioners v. Crumbaugh, 161 Ky. 540, a temporary as well as a final writ of prohibition was issued by this court to restrain Crumbaugh, as police judge, from hearing or giving judgment in a *habeas corpus* proceeding pending before him in which one Messer, a convict confined in the Eddyville penitentiary, was seeking to be discharged from the prison, in which he was lawfully confined. That, however, as will appear from this brief statement, was a very extraordinary case and the decision was put upon the ground that the police judge was not only proceeding out of his jurisdiction, but that the Board of Prison Commissioners had no adequate remedy if the police judge discharged the prisoner, as he announced from the bench he intended to do.

We have no such case before us. It would be an abuse of the power vested in us by section 110 of the constitution if we should restrain circuit or other judges from hearing and determining cases which they have the jurisdiction to hear and determine, unless some very unusual or very extraordinary reason should demand our interference. To establish a precedent like this would be to invite writs of prohibition in every case in which one of the parties apprehended that there might be a decision adverse to him in the case he sought to prohibit the judge from trying and determining.

Nor will the fact, that no appeal lies from the decision of the judge or court sought to be restrained, furnish ground for the issual of the writ, as in addition to the fact

that the complaining party has no adeqúate remedy by appeal, it must further plainly appear that great injustice would result or irreparable injury ensue from the decision of the lower court or judge if the writ were not issued. Rush v. Denhardt, 138 Ky. 238; Carey v. Sampson, Judge, 150 Ky. 460; Ohio River Contract Co. v. Gordon, Judge, 170 Ky. 412; Cohen v. Webb, 175 Ky. 1; Hieatt, Judge, v. Settle, 176 Ky. 160.

Under ordinary circumstances we would rest this opinion here, but in view of the fact that the present as well as the future welfare of an infant is involved, we will add that the decision of Judge Gordon, whatever it may be, will not be final or irreviewable in an equitable action if either of the parties interested, after Judge Gordon has handed down his decision, bring such action to have determined by the chancellor who shall have the custody of the child. If such an action is brought, the chancellor will and should make and enforce, pending its disposition, such orders consistent with the welfare of the child as may be needful to enable the court to keep it within its jurisdiction and retain supervision over its custody and care until the equitable action has been finally determined. Bedford v. Hamilton, 153 Ky. 429.

The writ is denied.