## Strangway, et al. v. Allen, Judge, etc., et al.

(Decided May 5, 1922.)

### Petition for Writ of Prohibition.

1.  Infants—Juvenile Delinquents.—Sections 325 to 331c-4, inclusive, and sections 331e-1 to 331k-5, inclusive, Kentucky Statutes, relating to the jurisdiction of county courts, concerning "delinquent" and "dependent" children, does not take away from the chancery side of the circuit courts, the jurisdiction to hear and determine the controversies between individuals, as to the custody of minor children, and to determine their legal and equitable rights to the custody of infants.

2.  Infants—Juvenile Delinquents—Jurisdiction.—The jurisdiction given to county courts, to supervise the care, custody and training of juveniles, is the process by which the state as *parens patriae* provides for and enforces its parental interest and authority.

3.  Equity—Rights of Parties.—When a court of equity has jurisdiction of a subject matter for one purpose, it will complete the transaction, and determine the rights of the parties.

R. RUTHENBERG and H. I. FOX for plaintiffs.

CLEM W. HUGGINS for defendants.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—
Dismissing.

The plaintiffs, Amelia Strangway and her husband Archie Strangway, sought by this action to prohibit the Jefferson circuit court, and especially the judge of the chancery branch, second division, of that court, from pro-

ceeding to try and determine the action of Charles and Barbara Distler against the Strangways, now pending in that court, upon the ground that neither of the branches of the Jefferson circuit court has jurisdiction of the subject matter of the action. The defendants have interposed a general demurrer to the petition.

The subject matter of the action of the Distlers against the Strangways, of which the latter are seeking to prevent the Jefferson circuit court from assuming jurisdiction, as gathered from the petition filed in equity in that court, is a controversy as to whether the Strangways or Distlers have a right to and should receive the custody of Ruth Stair, an infant ten years of age, and which of them are entitled to have the care, training, education and control of the infant. A special demurrer, which the Strangways offered was overruled, and they, as plaintiffs, here, are asserting that the Jefferson circuit court, although it is without jurisdiction to do so, will, unless restrained, proceed to try and finally adjudicate upon the issues in that action to the great annoyance, trouble and costs of the Strangways.

In the action in the circuit court, the Distlers have alleged that they are husband and wife, reside in Jefferson county, have a comfortable home, and are financially able to properly keep, maintain, educate and train the infant in walks of respectability and morality, and that they will not encroach upon a small estate of $600.00 which the infant has in the custody of the Louisville Trust Company, which is the guardian of her property; that they are very much devoted to the infant, and desire to maintain, educate and train her in their own home, and she is anxious to make her home with them; that the infant is their grandchild, the daughter of Amelia Strangway, who is their daughter; the father of the infant, who was the husband of their daughter, accidentally lost his life in 1914, from which time, for a period of three years, the infant and her mother resided in their home, and until the mother contracted a marriage with one Morgan. The mother and child then resided about two doors from them with Morgan, for about one year, when the mother procured a divorce from him. During the time the mother lived with Morgan, the infant lived a portion of the time with the Distlers. In a very short time after the mother was divorced from Morgan she married her present husband, Strangway, and in about two weeks thereafter, she and Strangway deserted the child, and went to live in the

state of Nebraska, where they resided for about two and a half years, during which time, they contributed nothing, nor made any effort to contribute anything to the care, maintenance or education of the child, but during that time the Distlers took the child, provided for her and maintained her at their own home and at their own expense. About the 25th of December, 1921, the Strangways returned to Louisville and demanded the custody of the child, and have had such custody ever since; that neither of the Strangways is engaged in any occupation whereby a living can be provided, and have no visible means of support, and are not financially able to either maintain or educate the infant, in a manner suitable to her station in life. They further aver that the Strangways are both persons of immoral habits and practices, live wayward lives, and are unfit morally to have care or custody or training of the infant, and that their influence will be hurtful to the moral character of the child, if permitted to remain with them; that the Strangways will endeavor to secure and spend the small estate of the child, and will not with their own efforts or means care for, maintain or educate her. The prayer of the petition is for the custody and control of the child.

The Strangways insist that the cause of action, as set out in the petition, in the circuit court, is one of which the county court, "in its juvenile sessions," has exclusive jurisdiction, and of which, as a matter of course, if that contention is sound, the chancery side of the circuit court has no jurisdiction at all.

The equity courts of general jurisdiction have held, from the time when it first dawned upon the civilization of our race, that a child is not absolutely a mere chattel of the parents to do with as they choose, jurisdiction of both property and custody of the persons of infants, and have as custodians of the interest of society in its members exercised a supervision over the care, custody and training of infant children, and whenever the property or person of an infant becomes a subject of disposition in the courts, the infant became at once a ward of the chancellor. Usually the jurisdiction of the chancery court has existed in spite of statutes which confer concurrent jurisdiction upon other tribunals touching the welfare and custody of infants. 22 Cyc. 519; 14 R. C. L. 271; Shallcross v. Shallcross, 135 Ky. 418; Stapleton v. Poynter, 111 Ky. 264; McBride v. McBride, 1 Bush 15; Irwin v. Irwin, 105 Ky. 641; Fletcher v. Fletcher, 21 K.

L. R. 1302; Adams v. Adams, 1 Duv. 169; Ellis v. Jessup, 11 Bush 403; Rallihan v. Motschman, 179 Ky. 180. The cases mentioned are only a few of those in this jurisdiction, which have dealt with the authority and power of the courts of general equitable jurisdiction to deal with the custody of minor children, but they demonstrate the principles which give to and control the jurisdiction of the chancery courts. The greater number of the decisions of this court upon such questions have been in contests between the parents of infant children as to their custody, and it might be assumed that jurisdiction in such cases has been vested by section 2123, Kentucky Statutes, but the cases of Stapleton v. Poynter and Rallihan v. Motschman, *supra,* were contests between the parents of infants and their grandparents who had no legal right to the custody, and that of Ellis v. Jessup, was a contest between a parent and an aunt of the infant who had the custody of the infant, and in Bedford v. Hamilton, 153 Ky. 429, the action was brought by one, who had adopted an infant, against its father, to secure its custody and the result of the action was that the custody of the infant was awarded to an orphanage, which was another party to the action. These actions had their inception in the circuit courts which unhesitatingly assumed and exercised jurisdiction touching the custody of the infants, and this court held expressly in some of the cases and tacitly in some of the others, that their right of jurisdiction was not to be questioned, and it expressly held in Rallihan v. Gordon, Judge, etc., 176 Ky. 471, wherein a proceeding by *habeas corpus* had been made use of to effect the transfer of the custody of an infant from the grandparents to a father that the *habeas corpus* proceeding did not affect the right of the grandparents to appeal to the chancellor in the circuit court to adjudicate their claim to the custody of the infant, and a similar holding was in Bedford v. Hamilton, *supra,* in behalf of a stranger. Hence, it is clear that the jurisdiction of the chancellor presiding in the circuit court, the court of general equitable jurisdiction under our system, touching the custody of infants, is undimmed and unaffected in any way unless and to the extent that exclusive jurisdiction of such subject may have been vested in another tribunal by statute. The statutes relied upon as having vested such exclusive jurisdiction in the county court, are sections 325 to 331, inclusive, and 331a-1 to 331k-5, inclusive, Kentucky Statutes. These statutes define two classes of

infants, delinquent and dependent children, which may be male children seventeen years of age and under, or female children who are eighteen years of age and under. In defining a "dependent" child within the meaning of that statute, among others who are denounced as "dependent" children, section 331e-1, *supra,* includes that class, "who has not proper parental care, or whose home, by reason of neglect, cruelty or depravity on the part of its parent, guardian or other person in whose charge it may be, is an unfit place for such child." The various provisions of the acts, *supra,* authorized the county court to take supervision of "delinquent" and "dependent" children, within the ages above stated, and to make such disposition of them as their best interest may require. Section 331e-2, provides:

"The county courts of the several counties of this state shall have exclusive jurisdiction in all cases coming within the terms and provisions of this act." It is insisted that the infant, Ruth Stair, according to the averments of the petition of the Distlers against the Strangways, in the circuit court, comes within the definition of that class of "dependent" children, and that it is averred that she has not the proper parental care, and on account of the depravity of her parents, their home is an unfit place for her, and hence the jurisdiction to make disposition for her custody is exclusively in the county court. To ascertain the soundness of the contention it is necessary to determine what "cases come within the terms and provisions of this act," as there can be no question that if the county court has exclusive jurisdiction, the circuit court is without any jurisdiction. Without undertaking to advert to the various provisions of the statutes, *supra,* as they are many and comprehensive, suffice it to say, that it has always been an admitted doctrine that the state as *parens patriae* has an interest in the welfare and training of all children within it, paramount to the interest of any private citizen, to the end that the health, patriotism, morality, efficiency, industry and integrity of its citizenship may be preserved and promoted, looking to the preservation and stability of the state. A careful reading of the various provisions of the acts, *supra,* which enlarge the jurisdiction of the county court, giving to it general supervisory power over "delinquent" and "dependent" juveniles, within the prescribed ages, leads to the conclusion that all of "the cases coming within the terms and provisions of this act" are simply cases where-

in the Commonwealth, as the common parent, undertakes
to exert its parental authority for the benefit of the
health, proper training and education of its children, for
the benefit of the best interests of the state, and to such
extent, only, does the exclusive jurisdiction go.    The
cases therein mentioned are those expressly in the style
of the Commonwealth against "delinquent" children,
and those in which some person on the relation of the
Commonwealth, is prosecuting a proceeding against a
"dependent" or "delinquent" child to correct the evil
so far as it affects the state. The acts, *supra,* provide for
the arrest and detention of delinquent children, and
where incorrigible beyond hope of reformation, are
turned over to the criminal courts for punishment.    A
child must be arrested or a proceeding instituted upon
the petition of a reputable citizen, who is a resident of the
county in behalf of the state, accusing the children of de-
linquency or dependency, before the county court has jur-
isdiction, Cullens v. Williams, 156 Ky. 57, but all the
proceedings look alone to the public interest and the en-
forcement of the parental duty of the state. If anything
else was intended by the acts, *supra,* it is incomprehensi-
ble that no provisions were made for jurisdiction to su-
pervise the custody or education of a male infant over
seventeen years of age, or a female infant over the age of
eighteen years, and it is not to be supposed that the leg-
islature intended that the infants not within the pre-
scribed ages should be hereafter freed from any super-
vision of their welfare and custody, or that such infants
should no longer be the subjects of contention between
parties.    Under the acts, proceedings can be set on foot
in the county court by a resident of the county, only, and
if such court has exclusive judisdiction in every kind of
an action to dispose of the custody of an infant, a father
or mother, or other person having the legal right to the
custody of an infant, and who does not reside in the
county wherein the infant resides, would have no tribunal
with jurisdiction to hear the claim for the custody of the
child. No case is provided for in the acts, *supra,* where-
in a private citizen having or claiming a legal or equit-
able claim or right to the custody of a minor child, could
be heard or have his right adjudicated, and the county
court having no jurisdiction of a child which is neither
"delinquent" nor "dependent" there would be no tribu-
nal for adjudicating claims to its custody anywhere, if
the acts in question confer exclusive jurisdiction in such

actions, as would be necessary to determine the custody of a child of that kind.

While the best welfare of the child is the star which should guide all courts in determining the custody and control of it, there are certain legal and equitable rights which private persons have to the custody of a minor child, and which pertain particularly to such persons. These rights, however, may be forfeited by their possessors, and may be subordinated to the welfare of the child, and are always under judicial control. To illustrate, among the legal rights to a child's custody, is the right of a parent or guardian for the custody of a child, and such rights will be enforced if the real and permanent interest of the child does not demand a different disposition. Another having no right to its custody may have it in possession and refuse to give it to the one having a legal right to it. There is nothing in the act, *supra*, which would give the county court jurisdiction of such a controversey, nor any supervision of the child at all for any reason, unless it was a delinquent or dependent. The legal right of a parent to the custody of a child, and to its services arises from a legal obligation upon his part to maintain the child and educate it in a reasonable manner, and to treat it with humanity and not destroy its morals by depraved habits or immoral example and teachings, but the parent may forfeit his right to the custody by failing to perform his obligations to it, and the welfare of the child demands that another have its custody. 29 Cyc. 1586; 2 Blackstone 452. It is not held, however, to be conducive to the best interests of the child to take it from its parent and give it to a stranger, when the parent is of good character and can and will reasonably, according to his station in life, give to the child a sufficient maintenance, support, moral training and education, and from such a parent a child will not be taken although in the opinions of those who have formed such from the effusions of visionary theorists and persons without children of their own, that leaving the child with such parent does not subserve its best interests. There may be conflicting legal rights of different persons to the custody of the child. There are equitable rights which persons may possess to a child's custody as having acted in *loco parentis* to the child when its natural protectors have deserted or abandoned it, and performed the obligations which a parent should perform, or where a child has been put into the custody of another by one who has the legal right to

its custody, and it has remained until the affections of the child for its custodians and surroundings have become such as that a separation would seriously affect the best interests and happiness of the child, and the one having legal right to its custody is unfit or unsuited therefor. Ellis v. Jessup, *supra;* Bedford v. Hamilton, *supra.* Under such circumstances, it is considered that the right of the custodian is superior to that of the one having in the first instance parted with the custody. The moral obligations of near relatives, other than parents or legal guardians, to provide for and maintain minor children, helpless because of infancy, or other reasons, and who have performed such services for the minor children, have often been held to give them a superior right to the custody of a child to one having a legal right to its custody, but who has been derelict in his obligations to it, or is not fit by reason of depraved habits, or other good reason, to have its custody. Cullens v. Williams, *supra.* The claims of conflicting right to the custody of minor children between individuals must have a tribunal for their determination. The circuit courts, on their chancery side, have always had judisdiction of these controversies, and we are of the opinion that such jurisdiction was not taken away by anything in the acts of the legislature, *supra,* giving to the county courts an enlarged jurisdiction with regard to juveniles, as such jurisdiction in all cases only affect the interests of the state as heretofore demonstrated.

It is needless to say that, in accordance with an ancient and salutary principle of equity, that when a chancery court assumes jurisdiction of a subject matter, it will finish the controversy and determine all the questions, necessary to justice between the litigants.

The petition is therefore dismissed and the temporary restraining order is dissolved.