## Arnold Sams v. Millie Burton Sams.

(Decided March 1, 1927.)

Appeal from Clark Circuit Court.

1. Divorce—Evidence Held to Justify Divorce for Wife for Abandonment and Cruel Treatment.—Evidence held sufficient to justify granting of divorce to wife alleging abandonment and cruel treatment, where husband alleged that wife was unchaste.

2. Divorce—Evidence in Divorce Suit Held to Justify Awarding Custody of Daughter to Mother, with Provision that Father Could Visit Her.—Evidence in divorce suit held to support judgment awarding custody of daughter to mother, with privilege to father to see her and visit her under conditions set out in order.

3. Divorce—Judgment in Divorce Suit Relating to Custody and Support of Child Will Not be Disturbed, in Absence of Clear Error.— In divorce suit, chancellor's judgment relating to custody and support of child will not be disturbed, unless it clearly appears that he has not reached judgment from fair consideration of all evidence in case.

4. Divorce—Allowance to Attorneys eo Nomine in Divorce Suit Cannot be Reviewed, where Attorneys are Not Parties to Appeal.— Where allowance was made to attorneys eo nomine in divorce suit, question whether allowance was too large cannot be considered on appeal to which attorneys were not made parties.

C. F. SPENCER for appellant.

BENTON & DAVIS for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Appellant and appellee were married in Clark county, Kentucky, on the 20th day of April, 1920. They

separated on the 24th day of November, 1921. There-
after on August 11, 1923, the appellee instituted suit
against appellant in which she sought a divorce on the
ground of abandonment and that she be awarded the cus-
tody of their infant daughter, Mabel Sams. At the time
of the institution of the suit Mabel Sams was two years
old. Later appellee filed an amended petition in which
she set up the additional grounds for divorce of cruel and
inhuman treatment. Neither in her original petition nor
in her amended petition did she seek alimony. Appel-
lant filed his answer and counterclaim in which he de-
nied the abandonment alleged in the petition and the
cruel and inhuman treatment alleged in the amended
petition. In a second paragraph he sets up a counter-
claim in which he alleged that appellee abandoned him,
and further alleged as grounds for divorce to him that
appellee had been guilty of such lewd and lascivious con-
duct as proved her to be unchaste. He also alleged that
appellee was not a fit or proper person to have the cus-
tody of their infant child. He sought the custody of the
child. A reply filed by appellee completed the issues.
Judgment was entered by the chancellor at the Septem-
ber term of the Clark circuit court, 1924. The judgment
granted appellee a divorce from the bonds of matrimony
and restored to her the name she bore before her marriage
to appellant. The chancellor reserved his judgment on
the question of the custody of the child and the matter of
an attorney fee to appellee's attorneys. At the December
term, 1924, the custody of the infant child was awarded
to appellee, with the privilege to the appellant to see her
and visit her under the conditions set out in the order
and judgment awarding her custody to appellee. The
chancellor further adjudged that appellant should pay to
appellee or to her attorney the sum of $5.00 per month
for the support and maintenance of the child. By the
judgment Benton & Davis, attorneys for appellee, were
allowed a fee of $500.00, to be paid by appellant. The
appellant excepted to the judgment of the court awarding
the custody of the child to appellee as well as the allow-
ance of the fee to the attorneys and the allowance for the
maintenance of the child.

Many depositions were taken and we deem it wholly
unnecessary to make any detailed statement of the testi-
mony. Appellant attempts to show by his proof that
after his marriage to appellee he resided with her in her

home in the city of Winchester; that she allowed persons of unsavory reputation to stay about her home, one of whom was her brother; that on one occasion shortly after their marriage he missed his wife from his bed some time about two o'clock in the morning and that he sought her in the rooms of the home and found her at last standing in the room where her brother was sleeping. He does not detail anything which would indicate that there was anything improper in the conduct of his wife, but he showed very clearly by his actions that he thought she had been guilty of some improper act. He left her home immediately and walked seven miles to his farm in the country. That afternoon he returned and had a consultation with his wife and it was agreed that they would move to his home in the country, and this was accordingly done. Some months thereafter men working on the telephone lines stopped at his home and he gave them water. There were five or six in the party and all of them went about their work except one who lay down on the grass in the yard. He remained there, according to the testimony of the witnesses for appellant, for about an hour and until the others returned and called him. Appellant claims that he heard this man make a remark to the other men which indicated that he had been guilty of improper relations with appellee. He put one witness on the stand, a young woman who was there at the time, and she testified that appellee went into her room and dressed and then motioned to the man in the yard to come into her room and that he did so and remained for something like an hour. This witness testified that appellee directed her to sit in the door and watch for the approach of appellant. The proof is convincing that appellee never saw this man before and did not know his name. His name was ascertained through some of the witnesses who testified, but he was not introduced as a witness by either party. Some of the other telephone men testified and they remembered no such occurrence as one of their number being called from the house as they returned from their work. Even if this story was not denied by the appellee and by the evidence of some of the telephone men, it would require a very credulous court to believe the truth of it. The only other charge which appellant attempts to establish by the evidence is that prior to the birth of the baby appellee was guilty of the offense of attempted infanticide. The proof is not satisfactory on

this point, and even if it should be we fail to see how it would tend to establish that appellee had been guilty of such lewd and lascivious conduct as proved her to be unchaste.

The testimony for appellee, aside from her own evidence, does not go far towards showing that appellant was cruel to her, but there is some evidence that he behaved toward her in a cruel manner, and there is evidence that he forced her to abandon his home. The chancellor knew the parties and the witnesses and the proof did not satisfy the chancellor that appellee had been proven guilty of such conduct as would brand her as an unchaste woman. He was fully sustained in the conclusion which he reached by the evidence, and we find no error in his awarding the custody of the child to its mother under the conditions set out in the judgment.

We find no complaint in the brief for appellant about the allowance made for the support and maintenance of the child. Taking into consideration the amount of property owned by appellant it seems to us that the amount is too small, but the chancellor has control of his judgment touching this matter and he will see to it that appellant pays such an amount as is justified under the circumstances. The chancellor is in a much better position to know what is best for the child than this court and we will not disturb his judgment relating to the custody and support of the child unless it should clearly appear that the chancellor had not reached his judgment from a fair consideration of all the evidence in the case.

It is insisted that the allowance made to the attorneys is entirely too large and that the judgment should be reversed for that reason. As to whether the allowance to the attorneys was greater than it should be, we express no opinion. We cannot determine this question. The allowance was made to Benton & Davis, attorneys, *eo nomine*, and under the law as settled in the case of Sallee v. Sallee, 213 Ky. 125, we cannot consider the judgment of the chancellor in this respect because Benton & Davis are not made parties to the appeal.

The judgment is affirmed.