## Moore et ux. v. Smith.

(Decided March 5, 1929.)

WILLIAM M. CATRON, JAMES DENTON and DENTON & PERKINS for appellants.

W. N. FLIPPIN and JOHN W. COLYAR for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Ralph E. Smith, the appellee, married Agnes Moore on November 11, 1914. There was born to them one child, who is now in his thirteenth year, and who is the subject of the controversy on this appeal.

When the child, Ernest Wilbur, was about 2 years of age, his parents separated, and his mother instituted a suit in the Pulaski circuit court seeking a divorce and the custody of the child on the ground of cruel and inhuman treatment. The suit was defended by appellee, and proof was taken both to support and refute the ground alleged in the petition. The chancellor awarded the mother a divorce from the bonds of matrimony and awarded her the custody of the child.

The judgment was entered in 1918. It provided that the mother, Agnes Smith, should have the custody of the

infant child without any reservation other than that the father should be allowed to see the child. Some years later Agnes Smith married again, as did Ralph E. Smith. Some time after her second marriage, the mother with her husband and the infant child, went to the state of Ohio. When they were preparing to leave, the appellee attempted to prevent their going through an injunction proceeding, but he did not succeed. They did not remain in Ohio long until they returned to Pulaski county, where they resided for some time, when they went to Colorado. While they were in Colorado, the mother died, and a few days thereafter the grandparents, the mother and father of Agnes, who, at the time, lived in Colorado, appeared in the county court of Larimer county, Colo., and filed a petition before the judge thereof showing that they were residents of that county and state and were desirous of adopting the infant, Ernest Wilbur Smith, and having his name changed to Ernest Wilbur Moore. This petition was filed in March, 1923. In the petition, it was shown that the child was 6 years old at the time, and that the mother of the child was dead, but the father was living. It was also alleged that the father abandoned the child when he was 2 years old. The facts stated in the petition were supported by the affidavits of J. M. Moore and Mary M. Moore, who are the appellants on this appeal.

When the petition was filed, L. H. Harrison, probation officer of the county court of Larimer county, Colo., was appointed to represent the child at a hearing on the adoption proceedings. He consented to the adoption of the child, and upon a hearing a judgment was entered upon the petition and proofs adduced. The judgment of adoption recited all the facts, and made the child, to all intents and purposes, the child and legal heir of J. M. Moore and Mary M. Moore, and gave to them all the rights and privileges as if the child had been begotten of them in lawful wedlock, and made them subject to all obligations for and on behalf of the child. The name was also changed from Smith to Moore.

Prior to the death of the mother of the child, she executed a paper, witnessed by two witnesses, in which she sought to turn over to the appellants the absolute care and custody of the child. After the adoption of the child in the courts of Colorado, the appellants returned to Pulaski county, Ky., and the child has resided with them at all times since.

In February, 1928, the appellee filed a petition before the Honorable R. C. Tartar, judge of the Pulaski circuit court, asking for a writ of habeas corpus, and seeking the custody of the child. He filed his affidavit stating that the appellants were retaining the custody of the child unlawfully and against the consent of the petitioner. The writ of habeas corpus was issued; thereupon the appellants filed an answer to the petition denying that they held the custody of the child illegally, and pleading that they had the custody of the child under the adoption by the court of Colorado, and also because of the paper executed by the mother prior to her death, placing the custody of the child with them. They further set out in their answer that they had been in custody of the child at all times since the death of its mother, supporting, caring for, and educating him. They also alleged that appellee was not a fit person to have the custody of the child. A reply was filed to the answer in which the affirmative allegations were denied.

Before there was a hearing on the writ of habeas corpus, the appellants filed a petition in equity in the Pulaski circuit court seeking an injunction to prevent the appellee's interfering with their custody of the child. In their petition they relied upon the same allegations found in their answer in the habeas corpus proceedings. The allegations of their petition were controverted by answer, and appellee attacked the jurisdiction of the Colorado court in the proceedings wherein the child was adopted by the appellants. The habeas corpus proceedings and the injunction proceedings were consolidated, and the old divorce case was reinstated on the docket and consolidated with them. Proof was taken, and, upon a final hearing, the custody of the child was awarded to the appellee.

Counsel for appellants urge many grounds for reversal. Their main contention is that, in proceedings over the custody of a child, the welfare of the child is the matter of chief importance, and will prevail over any mere preponderance of legal right in one or the other of the parties. Many cases are cited supporting the contention of counsel. The cases of Bedfort et al. v. Hamilton, 153 Ky. 429, 155 S. W. 1128, is an illustrative case of that class; and Walker v. Crocket, 194 Ky. 531, 240 S. W. 35, and Strangway v. Allen, 194 Ky. 681, 240 S. W. 384, are two of the leading cases discussing that particular point.

It is urged by counsel for appellants that the grand-parents have had the nurture and education of this boy during his helpless infancy, and that it would amount to cruelty to take him away from them and place him in the custody of his father, when his father has shown no interest in his welfare up to the filing of the petition seeking a writ of habeas corpus. It is true that the appellee does not stand in a favorable light on the record made. It appears that he was oblivious of the very existence of the child for many years, and it is suggested, with some plausibility, that he had no interest in him until he became of an age where he could render service of value to appellee. We are not inclined to believe that a father would seek the custody of his child for no reason other than that he might profit as the result of the labor of the child. There may be such fathers, but it is to be hoped that the number is small.

On the other hand, counsel for appellee ground their contention on section 2016, Kentucky Statutes, supported by the opinion of this court in the case of Hampton v. Alcorn, 213 Ky. 599, 281 S. W. 540. They say that, upon the death of one parent, the other is entitled to the custody of an infant, with one exception only, and that is that the surviving parent is not a fit person to have the custody of the child. If that be true, it would appear without careful consideration that there is a conflict in the opinions of this court, but such is not the case. Where a surviving parent has been denied the custody of an infant child since the amendment of section 2016 in 1910, an analysis of the opinions will show that the surviving parent was found to be unfit to have the custody of the child. Moreover the principle contended for by counsel for appellants is applicable when there is a contest between the parents or when both parents are dead, and others are contending for the custody of the child. The Legislature may control the custody of children by the enactment of laws, and, as it has provided that in the case of the death of one parent the other shall have the custody of an infant, if not an unfit person for that purpose, we must obey the mandate of the legislative branch of the government. We are not at liberty to substitute our judgment in such cases for the expressed judgment of the General Assembly. On this branch of the case, the only question for consideration is whether appellee, to use the exact language of the statute, is "suited to the trust."

The term is an elastic one, and it is always a question to be determined from the evidence whether a person is suited to the particular trust.

The standard cannot be made unreasonable, and, in determining whether a parent is suited to the trust, conditions, circumstances, and facts must all be taken into consideration, and each individual case must be determined from the facts, circumstances, and conditions in that particular case. Naturally a person is not suited to such a trust unless his moral character is reasonably good, or unless his opportunities to support the child are reasonably satisfactory, or unless the home surroundings are such as to justify the belief that the child will be brought up in an atmosphere which will result in a man or woman suited to good citizenship. Education is an important thing in the life of any child, and the reasonable ability of the parent claiming custody of the child to see to it that it has educational opportunities weighs heavily in determining whether the parent is suited to the trust.

It is true that this record discloses that appellee was cruel to his first wife. But the evidence was rather evenly balanced on that point in the divorce proceeding. His conduct has not been admirable in his ignoring the child for so many years, but he offers substantial reasons why he had given no attention to the child. It may be that in his younger days he was not suited to the trust of rearing a boy, such as his oldest son, but years have passed since the divorce record was made against him, and there have been opportunities for improvement, of which he may have taken advantage. If there is to be no forgiveness, there would be no need of repentance. It is sufficient to say that he introduced as witnesses a number of his neighbors who testified to his good standing and moral fitness. He has a wife and other children, and there is no proof in the record arousing even a suspicion that the boy would not receive loving attention in the home. Financially he is probably as well off as the appellants, and is therefore as able to educate the child as they are. The proof shows that he is suited to the trust, and, that being established, the provisions of the statute would have to prevail if there were no other questions to be considered. It is hard to determine questions of this kind without allowing sentiment to play a large part in their determination; but laws cannot give way to sentiment, and the tenderest feelings of the heart must be seriously

wounded at times because of the inexorable provisions of the law.

We are not done with the case, however, as there is another question which must be considered under other principles. This child was adopted by appellants in Colorado, and a complete copy of the proceedings, without objection, is made a part of this record. If the adoption was legal in Colorado, it is legal here; and if the judgment of adoption is legal, the appellants are entitled to the custody of the child under the law unless perchance they are not suited to the trust, and there is no proof that they are not.

The attack made on the judgment of adoption in the state of Colorado is based exclusively upon the fact that the appellee had no notice of the proceedings. If notice of the proceedings was required in Colorado and no such notice as required by the laws of that state was given, the judgment may be attacked in this state for lack of notice, as that is a jurisdictional matter. In the recent case of Capper v. Short, et ux., 226 Ky. 689, 11 S. W. (2d) 717, in discussing the effect which should be given to a judgment of the state of Ohio, this court said: ''The judgment here in question is entitled to the same effect in the tribunals of this state that it is entitled to in the state of Ohio, but it can be attacked here upon any grounds that would invalidate it in the state where it was rendered.'' That was but a restatement of the law as announced in the case of Bryant et al. v. Shute's Executor et al., 147 Ky. 268, 144 S. W. 28. There was no effort made by appellee to show whether notice to the surviving parent was necessary under the laws of Colorado, although counsel appeared to be familiar with the laws of that state on this point. The petition for adoption filed in Larimer county contained the statement that the mother of the child was dead, but the father was living, coupled with the further statement that the father had abandoned his child when he was 2 years old.

Section 635 of Mills' Annotated Statutes of Colorado, edition 1912, provides that, in proceedings for the adoption of an infant, consent in writing must be had if the infant is of the age of 14 years or over ''and by each of his or her living parents who is not hopelessly insane, intemperate or has not abandoned such child; or if there are no such parents, or if the parents are unknown or have abandoned such child, or if they are hopelessly insane or intemperate, then by the leave of the guardian;

or if there is no such guardian, then by a discreet and suitable person appointed by the Court to act in the proceedings as the next friend of such child." It appears, therefore, that, under the laws of the state of Colorado, notice is unnecessary in such proceedings to a parent who has abandoned the infant child which it is sought to adopt. The attack made upon the judgment of adoption cannot be sustained unless the record shows that appellee had not abandoned the child. We have no difficulty on that point. The custody of the child was awarded to the mother by the judgment of the Pulaski circuit court; that did not relieve the appellee of his duty to support the child or render such assistance toward its support as he was able to render. He did nothing whatever for the child.

Section 331-1, Kentucky Statutes, prescribes a penalty against any parent abandoning a child under 16 years of age residing in this commonwealth. The penalty is against the parent "who shall leave, desert or abandon said child or children under the age of sixteen years, leaving said child or children in destitute or indigent circumstances and without making proper provision for the board, clothing, education and proper care of said child or children in a manner suitable to the condition and station in life of said parent and said child or children shall be guilty of a felony," etc. This record discloses without contradiction that the appellee, under the definition in the statute quoted, abandoned the child while it was in Kentucky and when it was about 2 years of age. It is true that the child did not suffer for lack of attention, but that was not on account of anything that appellee did for it, and, so far as he was concerned, the child was left destitute, and no provision was made for the board, clothing, education, or proper care of the child.

We have reached the conclusion that the adoption of the child in Colorado was valid, and it follows that the judgment of the lower court must be reversed, with directions to award an injunction as prayed for in the petition filed by appellants.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.