## Baker et al. v. Coleman et al.

(Decided May 7, 1929.)

ROSCOE VANOVER, Jr., and W. W. BARRETT for appellant.

E. D. STEPHENSON and P. B. STRATTON for appellees. ·

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

Stella Thornsberry and Charles Coleman were married April 7, 1923; she was then 20 years old and he was 18. After living together about four months, they separated. On January 17, 1924, their child, Edwin Gray Coleman, was born. A reconciliation then occurred, and she returned to her husband. But they soon separated again, and on December 18, 1924, she filed an action for divorce on the ground of cruel and inhuman treatment. The grounds of divorce were clearly proved, and on April 23, 1925, she was granted a divorce, but nothing was said in that action about the child. After she separated from her husband and when she was in very bad health she was living with her sister. Charles Coleman's parents came to see her, and they say, in substance, that she gave up the child to them. She says that she agreed that they might take the child and keep it until her health got better. They took the child to their house and kept it. On December 4, 1926, after she had married Russell H. Baker and they were keeping house, Baker being a railroad employee in the office of the C. & O. Railway Company at Pikeville, she filed this suit against Charles Coleman, his father and mother, asking that the custody of the child be committed to her. The issues were made up; voluminous proof was taken, and on final hearing the circuit court dismissed her petition. She appeals.

Section 2016, Kentucky Statutes, provides that the father and mother shall have the joint custody of their infant child or children, and, in the event of the death of either, the survivor, who is suited to the trust, shall have such custody. In this case neither of the parents is dead. In Moore v. Smith, 228 Ky. 286, 14 S. W. (2d) 1072, one of the parents was dead. That case only dealt with that condition. By section 2123, Kentucky Statutes, it is provided, in substance, that the court shall make proper orders for the custody of the minor children "having, in all such cases of care and custody, the interest and welfare of the children principally in view."

In Preston v. Preston, 227 Ky. 564, 13 S. W. (2d) 752, the court thus stated the rule: "Every case of this character must stand alone, and the circumstances surrounding the parties and the facts disclosed must all be considered for the purpose of reaching a conclusion as to what is for the best interest of the child. Such cases are always difficult, and while it may be the general rule that the father should have the custody of the child if he is a fit person because it is his duty to maintain it, yet that rule is not without its exceptions. If the mother is better fitted to bring up the child than the father, the mere fact that he is the one who should support it should not outweigh the claims of the mother when she has proven her ability to do the things which are necessary to bring up the child in a way entirely satisfactory."

Applying these principles here, the court has no difficulty in determining that the custody of the child should not be committed to the father. He is a traveling man. He has no home of his own. He is very dissipated. When he is at home, he drinks. He is the father of a child born out of wedlock since his wife left him, and the treatment of his wife, as shown in the divorce proceedings, shows him an unfit person to have the custody of the child.

The question then arises, should the custody of the child be committed to the mother or the grandparents? The grandparents are worthy, good people, living on a farm. They both are about 60 years old, and, while they are much attached to the little boy, they have much to do, and the child is in fact without a mother's control and all that this implies. On the other hand, the mother lives in Pikeville; she and her husband are able to give the child a home and provide for it and give it better educational advantages than it can obtain in the country. The defendants introduced a mass of evidence to show improper conduct on the part of the mother and her bad character. It would serve no good end to set out here the proof, pro and con, on these questions; suffice it to say that, upon the whole record, the court is satisfied that there was no improper conduct by Mrs. Baker in the matters relied on, and the record as a whole satisfies the court that she is a lady of good character and a suitable person to have the custody of the child. Having in view the welfare of the child, it is the settled practice for this court to award the custody of a child of tender years to

the mother, unless it appears that she is not a suitable person, subject to the right of the father to see the child at reasonable times. Hoffman v. Hoffman, 190 Ky. 13, 226 S. W. 119; Stephens v. Stephens, 194 Ky. 180, 238 S. W. 380; Meadors v. Meadors, 213 Ky. 397, 281 S. W. 180; Day v. Day, 213 Ky. 562, 281 S. W. 493; Sams v. Sams, 218 Ky. 613, 291 S. W. 1058.

While this court gives much weight to the finding of the chancellor on questions of fact, in cases like this, it must give judgment as the right of the case requires, where on all the proof the court is satisfied as to the real facts.

Judgment reversed, and cause remanded for a judgment as above indicated in favor of the mother.