## Hunkler v. Collett et al.

June 11, 1948.

Glenn W. Denham and W. L. Rose for appellant.
Lewis & Weaver for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

Appellant, Opha Hunkler, sought by means of writ of habeas corpus to obtain the custody of her sons, William Collett and David Collett, from the paternal grandparents, appellees herein. Judgment was entered denying the writ, from which this appeal is prosecuted.

Appellant first married Berry Collett, son of appellees. At the time of the marriage appellant was 15 years of age and her husband 17 years of age. In November 1939, Berry Collett was killed. At the time of his death the older of the children was about 2½ years old. The second child, David, was born 7 months after the husband's death.

There is a conflict in the testimony as to the manner in which these two children were placed in the home of the grandparents. Appellees testimony shows that the mother took the two children to the home of the paternal grandparents and left them there telling the grandparents to do the best they could for them. Appellant states that about 4 or 5 months after the youngest child was born, and while she was in the home of the appellees, Mrs. Collett told appellant to leave the children with her, and especially David since he was sick and she would straighten him out, and that since appellant was young she would want to marry again, and whenever she was ready for her children they would be there for her. Anyway, the children were left with appellees and appellant went to the home of her parents to help her mother care for her father who was sick. She stayed with her mother throughout the father's illness and up until her father's death.

About 3 years after her husband's death she met and married Alfred Muzzies, shortly after which Muzzies was called into service. In order to be with her husband prior to the time he was sent overseas, and at his request, she accompanied him from camp to camp and stayed with him until he was sent across. This marriage ended in divorce in January 1946.

In December 1947, appellant married Joseph Hunkler. They now live in Cincinnati, Ohio. Joseph Hunkler is employed as an assembly line welder for the Fischer Body Company. He is about 27 years of age and earns from $50 to $60 a week.

The paternal grandfather, Manford Collett, is 70 years of age. His wife is 66 years of age. They live on a small farm of about 16 acres. A church and school are located close to their home where the children are regular attendants. The only income shown by the appellees is $13 per month old age pension for each of them and $25 per month from the Department of Welfare for the children.

The record shows that from the time the children were left with these grandparents up until this action was instituted, the mother saw the children rather infrequently, possibly two or three times each year; and that she contributed very little to their support although she received an allowance of $50 per month from her soldier husband while he was in service, and earned about $24 per week in her own right during that time.

On the witness stand the two children expressed a desire to remain with their grandparents. However, they said that the grandparents had talked to them about the case and told them they would be asked with whom they wished to stay.

Joseph Hunkler, the present husband of appellant, expressed a strong desire to have the children. The Hunklers reside in Cincinnati and occupy a two room apartment with bath. The apartment is situated within two blocks of a school and directly across the street from a church.

From the above we are faced with the difficult task of determining whether or not the chancellor properly resolved the cause. At the outset we meet the statutory provision entitling the surviving parent to the custody of the child "if suited to the trust." KRS 405.020. However, it might be stated that we have held this statutory right not to be absolute but that ultimately the welfare of the child is the controlling consideration. We have held that the term "suited to the trust" is elastic and involves the consideration of everything that may affect the welfare of the child. See Cummins v. Bird, 230 Ky. 296, 19 S. W. 2d 959. Bedford v. Hamilton,. 153 Ky. 429, 155 S. W. 1128.

On the other hand, we have also held that the standard set for a determination as to whether or not a par-

ent is suitable to the trust cannot be made unreasonable. Moore v. Smith, 228 Ky. 286, 14 S. W. 2d 1072.

Consequently, it will be necessary to view this case in the light of its particular facts, circumstances and conditions. We are not persuasively impressed with the attempts to attack the character and reputation of appellant in an effort to show her to be an entirely unfit person to have the care and custody of these children. What appellees attempted to show is relative to matters that happened 7 or 8 years ago. The charge was denied and the matter explained by appellant. It must, however, be kept in mind that at the time these children were left with the grandparents this mother was barely 18 years of age. She was left by her husband with the one child and expectant with the other, and without any apparent means of support. The grandparents did the commendable thing in helping to care for these children under the circumstances. There might be some justification in the charge that the mother was not as attentive as she might have been to her children during the years immediately following the time she left them with their grandparents, but there is no indication, as intimated by appellees, that she abandoned these children. She no doubt knew they were in good hands and made 2 or 3 visits each year to see them.

However, these are matters of secondary consequence and are not entirely controlling in our determination herein. We must not confine our thoughts to the past nor think entirely in terms of the present but must also look to the future welfare. As stated above, these children are in the home of their grandparents who are 70 and 66 years of age respectively. The only income they have according to this record is $26 per month the grandparents receive as old age pension, and the $25 received from the Welfare Department for the children. Without any criticism of this situation one cannot help but ask the question: Would this condition be conducive to the best interests of these children? While it is true these grandparents may outlive the surviving parent, yet it is natural to expect that these elderly people in their declining years will be unable to care for them and can hardly offer them what a parent could offer. In fact, it was never meant in nature for elderly people to rear children. Nature has fortified against this.

On the other hand, here is the mother who is 28 years of age, whose husband is about the same age, with a comfortable income, who not only can provide for these children but in addition thereto can offer to them that which only a mother can give. Courts should be most reluctant to destroy the natural ties between mother and child unless it be shown that there is some positive disqualification.

There is no great difference in the surroundings insofar as schools and churches are concerned.

By the enactment of KRS 405.020 above, it logically follows that the law presumes that the best interests of the child will be served by placing it in the custody of the parents. Therefore, weighing this matter in the light first of the statutory provision above, and then considering the additional circumstances, we conclude that the court should have placed these children in the care and custody of the mother during the period of the school term, that is to say, for nine months, and allowed them to stay with their grandparents during the school vacations in the summer. In this way the children will have the benefit possibly of better schools and the mother's love and care, and during the summer months have the advantages of the fresh air in the country, and at the same time give to these grandparents in their declining years the comfort of having their grandchildren with them this portion of time.

Wherefore, the judgment is reversed with directions to enter judgment consistent herewith.